E. M. HEATH v. RUDOLPH CORETH ET AL.

No. 850.

**Mistake in Conveyance—Assumption of Indebtedness—Privity of Contract.**

The defendant contracted for a certain lot and agreed to assume a debt of $1000. His vendor conveyed him a different lot, upon which there existed a lien for a like amount in favor of plaintiff, which incumbrance, according to contract, and by the terms of the deed, defendant assumed. Upon discovery of the mistake the property was reconveyed by defendant to his vendor, and the trade rescinded, but plaintiff sought to hold defendant on the assumption of the debt due to him. Held, that there was no privity of contract between defendant and plaintiff, nor did defendant become bound to plaintiff by any agreement based upon a valid consideration.

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*Brown & Camp,* for appellant.—Where a contract is invalid by reason of fraud, accident, or mistake, any undertaking or agreement on the part of the party defrauded, based upon the invalid contract, can not be enforced except in cases where the rights of an innocent party, without notice, intervene subsequent to the transaction, and for a valuable consideration.   Dean v. Engle, 1 Posey U. C., 186; Ross v. Armstrong, 25 Texas Supp., 366; Moreland v. Atchison, 19 Texas, 310; Moreland v. Atchison, 19 Texas, 40; Moreland v. Atchison, 17 Texas, 596; Culberson v. Blanchard, 79 Texas, 486.

*John Bookout* and *Lauch McLaurin,* for appellees.—Appellant by accepting the deed to himself assumed to pay the one thousand dollar note which was secured by a lien on the land.   By this acceptance appellant made the debt of his vendor his debt.   Spann v. Cochran, 63 Texas, 242, 243; Morrison v. Barry, 30 S. W. Rep., 376.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellee, Rudolph Coreth, upon a promissory note for $1000, and to foreclose a lien upon a lot in Oak Cliff.   It is alleged that the note was executed by A. L. Elliott to H. C. Burlew, or order, for the purchase money of said lot, and was by him endorsed to appellee, Coreth, who is now the owner and holder.   That afterward Elliott sold the lot to J. M. Clark, and that he sold it to appellant, E. M. Heath, who deeded it to J. M. Clark again, and he sold to W. T. Bessonette, and he to R. T. Monday, and that in each of their deeds such subsequent vendees agreed to pay the $1000 note above mentioned.

Defendant Heath, after his general answers, plead specially, that about June 26, 1891, he entered into a contract with J. M. Clark by which he agreed to exchange with Clark a tract of land for a lot in Oak Cliff. That in pursuance of such agreement he executed to Clark a deed for his land as agreed upon, and in his absence Clark had executed by mistake and placed on record a deed to appellant for the lot described in plaintiff's petition, which was not the lot for which he traded.   That on August 1, 1891, the trade between appellant and Clark was rescinded, and the former deeded back to the latter the lot.

On the trial, judgment was rendered in favor of appellee against Burlew, Elliott, and Heath, and in favor of defendants, Clark, Bessonette, and Monday, from which E. M. Heath alone has appealed.

The leading question to be determined is this:   Did E. M. Heath by his transaction with J. M. Clark become responsible to appellee, Rudolph Coreth, for the payment of the note sued on?

The facts, in brief, were as follows:   J. M. Clark owned the lot in Oak Cliff described in plaintiff's petition, and it was subject to the vendor's lien for $1000, held by appellee, Coreth.   In the summer of 1891, an agreement was made between appellee, Heath, and J. M. Clark, by which they agreed to exchange lands, as follows:   Heath was to deed to Clark 308 acres of land in Johnson County and pay him $150 in cash for a cer-

tain house and lot in Oak Cliff, subject to a lien for $1000; Heath complied with his part of the contract, and Clark, about June 26, 1891, executed to Heath a deed for the lot described in plaintiff's petition, in which deed it was expressed as a part of the consideration that Heath would pay off the $1000 note sued on in this case. Heath resided in Cleburne, Texas, and when he went to Oak Cliff a few days after the deed was received, he discovered that the lot called for in the deed was not the lot for which he had traded and which Clark had agreed to sell him, but wholly a different place, on a different street, and not near so valuable. Thereupon he sought Clark and demanded a recission of the contract. Clark had sold the land deeded to him by Heath to an innocent purchaser, but Heath conveyed the lot back to Clark, August 1, 1891, who accepted the same and afterward sold the lot to Bessonette. Appellant afterward sued Clark for the value of the land conveyed to him and the money paid to him on the trade, and now holds judgment against him therefor, for $2650. There was no privity of contract between appellant and appellee, nor did the former become bound to the latter by any agreement, based upon a valid consideration, with Clark.

There are several assignments of error seeking to test the validity of the judgment upon the facts proved. Although there was no direct agreement by E. M. Heath with appellee, Coreth, to pay the note sued on, and the former never signed any agreement to that effect, yet we fully recognize the principle of law, that if Heath had contracted with Clark, upon a valuable consideration, to pay the debt to Coreth, such contract could have been enforced by the latter. In the case of Spann v. Cochran et al., 63 Texas, 242, Judge Stayton said: "It is believed, however, that such an agreement between a debtor and a third person, made upon valuable consideration, gives to the creditor a cause of action on which he may sue and recover from the person who has so contracted to pay him a debt originally due only by the person to whom the promise is made.

"This seems to be in accordance with the great weight of American authority. McCown v. Schrimpf, 21 Texas, 27; Barker v. Bucklin, 2 Denio, 45; Schemerhorn v. Vanderheydon, 1 Johns, 140; Eddy v. Roberts, 17 Ill., 505; Rhodes v. Matthews, 67 Ind., 132; Todd v. Tobey, 29 Me., 224; Dearborn v. Parks, 5 Me., 85; Brown v. Strait, 19 Ill., 88; Johnson v. Knapp, 36 Iowa, 616; Mason v. Hall, 30 Ala., 601; Wilson v. Bevans, 58 Ill., 233; Putney v. Farnham, 27 Wis., 187."

There are respectable authorities holding the contrary view, but the above rule has been sustained by repeated decisions of our courts. The doctrine is sustained upon the ground that the promise is not to answer the debt of another, but that the promisor is simply answering for his own debt, and although he has agreed with his promisee that he will pay to a third party, it is still only the payment of the promisor's own obligation. The consideration for the promise passes directly to the promisor, and for such consideration he agrees to do a certain thing—to pay the debt of such third party. If there is no valid consideration passing between such promisor and his promisee, and, in fact, no valid

agreement, there is nothing upon which the third party can maintain an action, for the reason that he can not obtain, by proxy, higher rights than the original promisee could have had if the promise had been to pay him directly this amount.

Mr. Story, after a full discussion of the authorities, both English and American, and in laying down the above rule, as the American doctrine, says: "And the ground on which this rule stands is, that although the third person may be a stranger to the express promise, as between the other parties, yet the transaction creates a trust, out of which an implied promise arises to pay over the sum to the third party." 1 Story on Con., sec. 451b.

If this is the true ground upon which the rule is based, then equity would never cause a trust to spring from a transaction such as is shown by the evidence in this case. In order to hold the appellant liable upon the note, he not being a party thereto, it was necessary for appellee to show such a state of facts as would, in good conscience, create a trust in favor of the latter. Neither a trust or an implied promise to pay the debt of another can be created where the express contract in which it is claimed to have originated has been rescinded for misrepresentation on the part of the promisee, and the transaction between such parties has been cancelled and set aside.

In this case, the facts are not disputed that Clark misrepresented to appellant the property sold and actually deeded him the lot in controversy, when he had agreed to sell him a wholly different lot. The deed was promptly cancelled and the trade rescinded when the mistake was discovered. Whether the mistake was innocently made by Clark or was a fraudulent device, the result would be the same. In either event Heath would have been entitled to a cancellation. Watson v. Baker, 71 Texas, 739; Galbraith v. Reeves, 82 Texas, 357.

But the parties to the transaction did not wait for a rescission in the courts; they rescinded among themselves as far as they could do so, by Heath deeding the lot back to Clark. The latter accepted it and sold to Bessonette, and appellee in this suit sought to hold him also liable on the note. The 308 acres of land deeded by Heath to Clark had been sold to an innocent party, and appellant recovered a judgment for its value against Clark. Under such a state of facts, it is clear that there was no privity of contract between appellant Heath and appellee Coreth, and no consideration passing to the former from Clark which would create a trust or raise an implied promise so as to bind Heath to pay the debt sued on.

There being no controversy about the facts, and it being clear that appellant is not liable on the note sued on, the judgment is reversed and here rendered in favor of appellant.

*Reversed and rendered.*

Delivered June 19, 1895.